STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
NATIONAL SPECIALTY INSURANCE        :
COMPANY,                                                        :
                                                                          :
      Plaintiff,                                            :
                                                                          :    10 CV 899 (HB)
         - against -                                  :
                                                                          :    OPINION &
                                                                          :    ORDER
VIDA CAFÉ INC. T/A MAMAJUANA      :
CAFÉ, VIDA GROUP, INC., ANDREA     :
REYES, AS ADMINISTRATRIX OF         :
THE ESTATE OF ALEXANDER FELIX, :
ANDREA REYES, INDIVIDUALLY          :
AND FAUSTA NUNEZ,                              :
                                                                          :
      Defendants.                                        :
------------------------------------------------------------x

**Hon. Harold Baer, Jr., District Judge:**

        This case involves a dispute over whether the plaintiff insurer must cover, indemnify and defend the insured defendants in two underlying lawsuits pending in the Supreme Court of the State of New York, County of Bronx.  The lawsuits arise from an alcohol-related car accident in which a Vida Café patron allegedly killed Alexander Felix and caused bodily injury to Fausta Nunez.  Codefendants in this action are opposing parties in the underlying lawsuits, which are entitled *Andrea Reyes, as Administratrix of the Estate of Alexander Felix et ano. v. Vida Café Inc., et al*, Index No. 304325/2009, and *Fausta Nunez v. Vida Café Inc. et al.*, Index No. 309715/2009.  Plaintiff National Specialty Insurance Company ("NSIC") moves for summary judgment declaring that it need not provide insurance coverage to Defendants Vida Café Inc. t/a Mamajuana Café and Vida Group, Inc. (collectively "Vida"), nor defend nor indemnify them in the two underlying lawsuits.  Defendants Andrea Reyes, as Administratrix of the Estate of Alexander Felix, and Andrea Reyes, individually, (together the "Estate") cross-move for summary judgment seeking a declaration to the contrary.  For the reasons that follow, NSIC's motion is DENIED and the Estate's motion is GRANTED.

**FACTUAL BACKGROUND**[1]

Vida Café is a bar located in the Bronx. Pl.'s 56.1 ¶ 4. During the relevant period it was insured by NSIC, through NSIC's managing general agent RCA (referred to as "NSIC" or "Plaintiff"). Pl.'s 56.1 ¶ 3. On July 2, 2007, non-party Kevin Casado is alleged to have drank alcohol at Vida Café. *See* Decl. Supp. Pl.'s Mot. Summ. J., Exs. F, H ¶ 11. He allegedly drove away while intoxicated, and struck and killed motorcyclist Alexander Felix. Pl.'s 56.1 ¶ 6. After the initial collision, Felix's motorcycle allegedly struck a third vehicle operated by Fausta Nunez, causing her bodily injury. Pl.'s 56.1 ¶ 8. Employees of Vida Café had allegedly served Casado while he was visibly intoxicated. Pl.'s 56.1 ¶ 7. The Police accident report noted that Casado was under the influence of alcohol but made no reference as to whether he had been drinking at a public establishment. Pl.'s Ex. M. The accident was investigated by the New York City Police Department, who visited Vida Café sometime prior to July 24, 2007 and spoke with the bartender who had served Casado "several drinks" the night of the accident. Pl.'s Ex. F. Vida became aware of the accident the day after it occurred. *Id.*; Pl.'s Exs. G, H.

Following the accident the Estate's attorneys hired an investigator, Raymond Cabrera, who obtained a copy of the accident report and interviewed a police officer (though not one alleged to be the report's author) on July 17, 2007. Estate's 56.1 ¶ 14.[2] Cabrera specifically asked the officer if a bar or tavern was involved in order to determine the existence of potential Dram Shop liability in a public establishment; he was informed that Casado had been drinking at a private location but not at a bar or tavern. *Id.*; Estate's Ex. 2, Sworn Aff. of Raymond Cabrera; Pl.'s Ex. L at 9, Reyes Defs.' Interrogatory Responses (noting that Cabrera's "custom and practice is to inquire in any case involving alcohol consumption whether a bar or tavern was involved in order to pursue a potential Dram Shop action. Upon receiving the [Police] report, Mr. Cabrera was advised by the [officer] that no such bar or tavern was involved."). The officer also informed Cabrera that the accident was under investigation and the substance of the Accident Investigation Squad (AIS) report was unavailable and would only be released upon a judicially ordered subpoena following the conclusion of criminal proceedings against Casado. Estate's

---

[1] The following facts are undisputed unless otherwise noted.
[2] Plaintiff denies the facts involving Cabrera's investigation on the grounds that they were "not claimed in [the Estate's] interrogatory responses." Pl.'s Counter to Estate's 56.1 ¶14. However, these facts *are* included in the Estate's Interrogatory Responses, which are appended to Plaintiff's own motion as Ex. L. Each fact is also contained in a sworn affidavit by Raymond Cabrera appended to the Estate's motion papers as Ex. 2. Plaintiff has thus misstated grounds for disputing these facts. Nonetheless, they form no part of the basis for my decision.

56.1 ¶ 14.  The Estate concluded that there was no evidence of Dram Shop liability because no bar or tavern was involved.  *Id.*  Although the record includes three police reports and two of them reference the fact that Casado had been drinking at Vida Café, *see* Pl.'s Exs. F, M, N, the Estate maintains that the only report available to it initially was the one with no such reference.  *See* Estate's Mem. Supp. Summ. J. 19.

In February 2009, after learning of the conclusion of the Casado criminal proceedings,[3] the Estate sought and received a judicial subpoena for the AIS file, which it obtained on May 1, 2009.  Pl.'s Ex. L.  The AIS file included a report of an interview in which Vladimir Nunez, a passenger in Casado's vehicle at the time of the accident, stated that before the accident Casado had been drinking at a family party as well as at Vida Café.  Pl.'s Ex. N.  From May 15-27, 2009, the Estate's representatives made five visits to Vida Café attempting to ascertain the identity of Vida's insurance carrier.  Estate's 56.1 ¶ 20.  Having failed, on June 1, 2009 the Estate wrote to Vida requesting that Vida notify its insurance carrier of a claim it intended to file.  Estate's 56.1 ¶ 21.

On June 17, 2009 NSIC received a copy of the Estate's state court complaint from Vida's insurance broker, which NSIC construed as a claim for coverage.  *See* Pl.'s Exs. H; I.  It responded on June 29, 2009 with a letter informing Vida that it was "investigating this claim" and "reserves the right to deny coverage for this loss if our investigation reveals that we were not given timely notice of the occurrence as required by your policy."  Pl.'s Ex. I.

The Estate first learned of NSIC's status as Vida's insurer on July 2, 2009 when it received a courtesy copy of NSIC's June 29, 2009 letter.  Pl.'s Ex. J; Estate's 56.1 ¶ 22.  As a result, on July 6, 2009 the Estate's attorney wrote to NSIC to provide notice pursuant to N.Y. Ins. Law § 3420(a).  Pl.'s Ex. J.; Estate's 56.1 ¶ 22.

NSIC wrote to Vida on July 16, 2009, again with a courtesy copy to the Estate's attorney, citing the policy's notice provision, and asserting that Vida had "failed to notify [NSIC] of the [Estate's] claim as soon as reasonably practicable in direct contravention to the [policy's] notice requirements."  Pl.'s Ex. K.  It also reserved the right "to raise any additional grounds as a basis to disclaim coverage."  *Id.*  NSIC's July 16, 2009 letter did not mention the Estate's notice letter

---

[3] Although the parties have not made the Casado criminal trial the subject of any factual submissions, Plaintiffs represent that it concluded in March of 2008.  *See* Pl. Mem. Opp. Summ. J. 11.

of July 6, 2009.  NSIC has presented no evidence that it ever addressed the Estate's July 6, 2009 letter, nor does it argue that its filing the present action constitutes a disclaimer as to that letter.

### DISCUSSION

Summary judgment is warranted if the moving party shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  *See Cordiano v. Metacon Gun Club, Inc.*, 575 F.3d 199, 204 (2d Cir. 2009); Fed.R.Civ.P. 56(c).  In support of its motion for summary judgment, NSIC argues that Vida failed to timely notify NSIC of the underlying claims, as required by its policy, and the Estate's independent notice failed to "cure" this defect.  The Estate's cross-motion for summary judgment posits that NSIC's July 16, 2009 letter failed as an effective disclaimer against the Estate, and, in any case, the Estate's independent notice was timely.

New York Insurance Law § 3420(a) allows an injured party with an unsatisfied judgment against an insured party to sue the insurer for satisfaction of the judgment in some circumstances; subsection (a)(3) permits the injured party to give notice directly to the insurer to protect that right of direct action; and subsection (a)(4) sets the standard for reasonableness of that notice.  *See* N.Y. Ins. Law § 3420(a); *Continental Ins. Co. v. Atlantic Cas. Ins. Co.*, 603 F.3d 169, 174-75 (2d Cir. 2010).   The injured party's ability to give notice and preserve its rights is independent of that of the insured, and whether the injured party or the insured gives notice first is generally of no consequence.  *See Continental*, 603 F.3d at 178-79.

Under New York law, when an insurer disclaims liability because an insured failed to provide reasonable notice but fails to address any independent notice by an injured claimant,, the disclaimer is ineffective as to the injured claimant; this is true even though the injured claimant's notice may not have been reasonable under § 3420(a)(4).  *See, e.g.*, *General Accident Insurance Group v. Cirucci*, 46 N.Y.2d 862, 863-64 (1979).  *See also MCI LLC v. Rutgers Cas. Ins. Co.*, No. 06 Civ. 4412 (THK), 2007 WL 2325867, at *10 (S.D.N.Y. Aug. 13, 2007) (Katz, M.J.); *Wraight v. Exchange Ins. Co.*, 234 A.D.2d 916, 918 (4th Dept. 1996).

In this case the insured, Vida Café, sent notice that was received on June 17, 2009, and the Estate independently sent notice pursuant to section 3420(a) on July 6, 2009.  This correspondence provided NSIC with knowledge of the Estate's claims, as well as the circumstances giving rise to NSIC's potential defense of unreasonable section 3420 notice.

NSIC's letter of July 16, 2009 cited Vida's failure to provide timely notice and may have constituted a prompt and specific disclaimer as to Vida.  However, it did not mention the Estate's independent notice and therefore fails as a matter of law to effectively disclaim coverage as to the Estate.  Thus, I need not decide whether the timeliness of the Estate's notice would otherwise have provided proper grounds for disclaimer.  *See, e.g.*, *Cirucci*, 46 N.Y.2d at 864; *Progressive Northern Ins. Co. v. Beltempo*, No. 97 Civ. 4033 (CS), 2009 WL 1357947, at *6 (S.D.N.Y. May 14, 2009) (if an insurer "possesses actual or constructive knowledge of the circumstances regarding a potential defense, yet asserts only other defenses, New York law deems the insurer, as a matter of law, to have intended to waive the unasserted defense.") (*citing Rutgers Cas. Ins. Co.*, 2007 WL 2325867.

To be sure, as NSIC notes, courts have held that an insurer's disclaimer based on the insured's having provided unreasonable notice is effective as against injured parties who failed to provide section 3420(a) notice prior to the insurer's disclaimer.  *See e.g. Webster v. Mount Vernon Fire Ins. Co.*, 368 F.3d 209, 217 (2d Cir. 2004); *Steinberg v. Hermitage Ins. Co.*, 26 A.D.3d 426, 428 (2d Dept. 2006).  Here, however, the Estate provided notice prior to the disclaimer.  NSIC's letter of June 29, 2009 did not disclaim coverage, but rather noted that it was commencing an investigation into the claim and reserved its rights to disclaim coverage pending the results of that investigation.  *See* Pl.'s Ex. I.  By the time NSIC denied coverage on July 16, 2009, it had received section 3420(a) notice from the Estate.

On the other hand, there are neither facts nor allegations that NSIC had notice of the Nunez claim prior to its disclaimer on July 16, 2009.  The Estate's motion papers seek relief with respect to both underlying lawsuits.  With respect to Nunez, the parties have failed to provide a basis for extending such relief, and NSIC had no duty to disclaim as to him because it never received notice of the Nunez claim.

I need not reach the merits of NSIC's motion because I conclude as a matter of law that NSIC's undisputed failure to address the Estate's independent notice renders any disclaimer ineffective as against the Estate.  Since the relief sought by each movant is directly contrary, resolution of the Estate's motion renders NSIC's motion moot.  However, I note that even had NSIC's disclaimer been effective, facts remain in issue as to whether the Estate acted with reasonable diligence.  Under section 3420(a), the injured party must pursue its rights to notify the insurer "with as much diligence as was reasonably possible under the circumstances."

*Continental*, 603 F.3d at 176 (*citing Malik*, 60 A.D.3d at 1016). This separate standard is more lenient than the standard for the insured party's notice [and] is governed not by mere passage of time but by means available for such notice." *Malik*, 60 A.D.3d at 1016. Within just over two weeks of the accident in this case, the Estate had hired counsel, counsel had hired an investigator, and the investigator had sought police records and interviewed an officer. The length of time that the Estate waited before pursuing its rights against Vida and NSIC is mitigated by the fact that, after inquiring as to potential Dram Shop liability, it was affirmatively told by the police that no tavern or bar was involved in the accident. Within a month after the police error was revealed, an Estate representative visited Vida Café five times and wrote a letter regarding its claim. After learning that NSIC was Vida's insurer, the Estate sent notice within four days. *See* Pl.'s Ex. J. These facts present a strong case for reasonable diligence, and at a minimum defeat NSIC's motion for summary judgment.

## CONCLUSION

For the foregoing reasons, NSIC's motion is DENIED and the Estate's cross-motion is GRANTED. NSIC is directed to cover, defend and indemnify Vida in the underlying action by the Estate, in accordance with the terms of Vida's policy. NSIC need not undertake the same with respect to any expenses attributable solely to the Nunez lawsuit.

The Clerk of the Court is instructed to close the matter and remove it from my docket.

SO ORDERED
December 20, 2010
New York, New York

Hon. Harold Baer, Jr.
U.S.D.J.