STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
NATIONAL SPECIALTY INSURANCE          :
COMPANY,                              :
                                      :
    Plaintiff,                        :
                                      :   10 CV 899 (HB)
        - against -              :
                                      :   OPINION &
VIDA CAFÉ INC. T/A MAMAJUANA          :   ORDER
CAFÉ, VIDA GROUP, INC., ANDREA        :
REYES, AS ADMINISTRATRIX OF           :
THE ESTATE OF ALEXANDER FELIX,        :
ANDREA REYES, INDIVIDUALLY            :
AND FAUSTA NUNEZ,                     :
                                      :
    Defendants.                       :
------------------------------------------------------------x

**Hon. Harold Baer, Jr., District Judge:**

    Plaintiff National Specialty Insurance Company ("NSIC") moves for reconsideration of this Court's Opinion and Order, dated December 20, 2010, which denied its motion for summary judgment and granted the cross motion of Defendants Andrea Reyes, as Administratrix of the Estate of Alexander Felix, and Andrea Reyes, individually (together, the "Estate").

    Familiarity with the case is presumed, but I will briefly summarize the facts of particular relevance to the present motion. On July 7, 2007, non-party Kevin Casado was involved in an automobile accident that killed Alexander Felix. Just prior to the accident, Casado was allegedly served alcohol at Vida Café while visibly intoxicated. The Estate sued Vida Café in New York State Court on allegations of "Dram Shop" liability. Vida Café sent notice of the Estate's lawsuit to its insurer, NSIC, on June 17, 2009. NSIC responded on June 29, 2009, informing Vida that it was "investigating this claim." The Estate received a courtesy copy of that letter on July 2, 2009. Although the Estate's representatives had tried numerous times in numerous ways to ascertain the identity of Vida Café's insurer, it was only upon receipt of this letter that it finally obtained that information. On the very next business day, July 6, 2009, the Estate sent NSIC independent notice of its rights pursuant to New York Insurance Law § 3420(a).

    NSIC wrote to Vida on July 16, 2009, again with a courtesy copy to the Estate's attorney, to disclaim coverage on the grounds that Vida had "failed to notify [NSIC] of the [Estate's]

1

claim as soon as reasonably practicable in direct contravention to the [policy's] notice requirements." Its letter did not mention the Estate's notice of July 6, 2009.

      NSIC sought declaratory relief in this Court, and the parties cross-moved for summary judgment. After a review of the relevant case law, I concluded that NSIC's July 16, 2009 disclaimer was ineffective as to the Estate, and the Estate was entitled to summary judgment.

## DISCUSSION

### A. The legal standard

   A motion for reconsideration, governed by Local Civil Rule 6.3, is "generally not favored and is properly granted only upon a showing of exceptional circumstances." *New York v. Parenteau*, 382 F. App'x 49, 50 (2d Cir. 2010). "[R]econsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked. *Id.* (internal quotations omitted). "Thus, a motion to reconsider should not be granted where the moving party is solely attempting to relitigate an issue that already has been decided. *Id.*

### B. NSIC cites neither controlling decisions nor data that were overlooked

   Plaintiff asserts that the Court misinterpreted or misapplied controlling decisions when it concluded that NSIC's disclaimer of coverage to its insured, Vida Café, was invalid as to the Estate. It maintains that it was not required to address the Estate's notice because Vida Café provided notice before the Estate. *See* Pl.'s Mem. Supp. Reconsideration 1. However, "New York courts do not dismiss the injured party's notice simply because it came second." *Cont'l Ins. Co. v. Atl. Cas. Ins. Co.*, 603 F.3d 169, 175-76 (2d Cir. 2010). The Second Circuit has rejected the conclusion that because the injured party's notice came after the insured's notice it was "superfluous." *Id.* at 178, 179 (finding that the injured party's notice "was not ineffective simply because it came after [the insured's]"). Rather, the injured party's rights under section 3420 are fully independent from the contractual rights of the insured. *See id.* at 175 (citing *Appel v. Allstate Ins. Co.*, 20 A.D.3d 367, 368 (1st Dept. 2005) ("Having been statutorily granted an independent right to give notice and recover directly from the insurer, the injured party or other claimant is not to be charged vicariously with the insured's delay.")).

   It is true that the Second Circuit noted in dicta that "the insurer's disclaimer to the insured need not address the injured party's subsequent notice." *Cont'l Ins. Co.*, 603 F.3d at 178. But taking that phrase out of context will not do; it appeared as part of an explanation of the district court's error and appears to contemplate scenarios – distinct from that at bar – in which the insurer disclaims the insured's claim *prior to* receiving notice from the injured party. *See id.* ("this rule makes sense because the insurer might receive the insured's notice and send a

2

disclaimer to the insured before the insurer receives any notice from an injured party or has any reason to know that an injured party will be providing independent notice.").

As further explanation of the district court's error, that decision provided a footnote on *Mass. Bay Insurance Co. v. Flood,* a case relied upon by NSIC. There, the Appellate Division noted that after the insured provided notice, "any subsequent information provided by the injured party was, for notice purposes, superfluous, because there was already prima facie compliance with the contractual notice requirements of the policy," and the injured party's notice "need not be addressed in the [insurer's] notice of disclaimer where, as here, the initial notice of the occurrence was provided to the carrier by the insureds." 128 A.D.2d 683, 684 (2d Dept. 1987). Here, there was no compliance with the contractual notice requirements of the policy. Unlike in *Flood*, the Estate's notice serves an independent purpose and stands on independent grounds. An effective disclaimer would have required NSIC to state its grounds with a high degree of specificity. *See Adames v. Nationwide Mut. Fire Ins. Co.*, 55 A.D.3d 513, 515 (2d Dept. 2008).

The Appellate Division subsequently made clear that *Flood* – as interpreted by NSIC – does not state a prevailing rule. It affirmed that where an insurer "disclaimed coverage based solely upon its insured's failure to provide timely notice . . . [it is] estopped from raising [the injured party's] alleged untimely notice as a defense." *Wraight v. Exch. Ins. Co.*, 234 A.D.2d 916, 918 (4th Dept. 1996). The court went on to say that "[t]o the extent that the Second Department's decision in [*Flood*] conflicts with our holding, we decline to follow it." *Id.* If any doubt remains as to a split within the Appellate Division, I conclude that the rule recognized by the *Wraight* court is correct because it more faithfully reflects the legislature's intention, made explicit in section 3420, to protect the injured party. *See Cont'l Ins. Co.*, 603 F.3d at 175.

This conclusion presents nothing new. It is settled that under § 3420(d), "[a] notice of disclaimer must promptly apprise the claimant with a high degree of specificity of the ground or grounds on which the disclaimer is predicated, and an insurer's justification for denying coverage is strictly limited to the ground stated in the notice of disclaimer." *Adames*, 55 A.D.3d at 515 (*citing Gen. Accident Ins. Group v. Cirucci*, 46 N.Y.2d 862, 864 (1979)). Thus, "an insurer waives any ground for denying coverage that is not specifically asserted in its notice of disclaimer, even if that ground would otherwise have merit." *Id. See also Wraight*, 234 A.D.2d at 918.

In short, NSIC fails to show any controlling decisions that were overlooked, and its motion appears to be an improper attempt to relitigate an issue already decided.  *See New York v. Parenteau*, 382 F.App'x 49, 50 (2d Cir. 2010).

### C. Even assuming the Estate's notice is subject challenge, the Estate prevails because it acted with reasonable diligence.

Regardless of the foregoing discussion of New York law, I am mindful of the Second Circuit's admonition to consider the injured party's diligence. "When the insured gives late notice first and the injured party gives subsequent notice, courts determine whether the injured party's notice has effectively protected the injured party's right to sue not by looking at the order in which the insurer received that notice, but by examining whether the injured party "pursued his rights" to notify the insurer pursuant to Section 3420(a) with as much diligence as was reasonably possible under the circumstances."  *Cont'l Ins. Co. v. Atl. Cas. Ins. Co.*, 603 F.3d 169, 175-176 (2d Cir. 2010) (internal quotations omitted).  Although *Continental Insurance* was decided on other grounds, this seems to suggest that the disclaimer affected neither the Estate's right to sue nor NSIC's right to challenge the claim on the basis of timeliness.  Thus, an inquiry into the diligence of the Estate's efforts appears inevitable.

I previously concluded that the facts presented by the Estate "present a strong case for reasonable diligence, and *at a minimum* defeat NSIC's motion for summary judgment."  *Nat'l Specialty Ins. Co. v. Vida Cafe Inc.*, No. 10 Civ. 899(HB), 2010 WL 5222119, at *4 (S.D.N.Y. Dec. 20, 2010) (emphasis added).  On further consideration, I conclude that the Estate is entitled to summary judgment because it pursued its rights with reasonable diligence under the circumstances.  As I noted previously:

> Under section 3420(a), the injured party must pursue its rights to notify the insurer "with as much diligence as was reasonably possible under the circumstances." *Continental*, 603 F.3d at 176 (*citing Malik*, 60 A.D.3d at 1016).  This separate standard is more lenient than the standard for the insured party's notice [and] is governed not by mere passage of time but by means available for such notice." *Malik,* 60 A.D.3d at 1016. Within just over two weeks of the accident in this case, the Estate had hired counsel, counsel had hired an investigator, and the investigator had sought police records and interviewed an officer. The length of time that the Estate waited before pursuing its rights against Vida and NSIC is mitigated by the fact that, after inquiring as to potential Dram Shop liability, it was affirmatively told by the police that no tavern or bar was involved in the accident.

4

*Id.* Within a month after the police error was revealed, the Estate had identified Vida Café's potential role in the death of Alexander Felix, and an Estate representative had visited the Café five times and written a letter regarding its claim – all with a view to contacting Vida's insurer. *Id.* When it finally learned that NSIC insured Vida, the Estate sent notice the very next business day. On these facts I conclude that the Estate pursued it rights with as much diligence as was reasonable under the circumstances, and is entitled to judgment as a matter of law.

## CONCLUSION

For the foregoing reasons, NSIC's motion for reconsideration is DENIED. The Clerk of the Court is instructed to close the motion and remove it from my docket.

SO ORDERED
March  , 2011
New York, New York

Hon. Harold Baer, Jr.
U.S.D.J.

5